PETER HEAD V. JACOB LEVY ET AL.

FILED OCTOBER 20, 1897. No. 7504.

1. **Justice of the Peace: ISSUANCE OF ATTACHMENT WITHOUT BOND:
   DAMAGES.** A justice of the peace who issues an order of attach-
   ment against a resident of the state, without an undertaking
   therefor first having been executed, is liable for nominal damages
   to the defendant in such attachment, although the latter suffer
   no actual injury therefrom.

2. **Change of Venue: COSTS: JUSTICE OF THE PEACE: MALFEASANCE.**
   Where a change of venue is granted by a justice of the peace on
   application of the defendant, such justice can tax to such defend-
   ant only "costs which have accrued for issuing subpœnas for wit-
   nesses and service thereof, witness fees, and costs of the justice
   for transferring the cause to the docket of the other justice."
   (Code of Civil Procedure, sec. 958.)

ERROR from the district court of Douglas county.
Tried below before AMBROSE, J.  *Reversed.*

*F. W. Fitch*, for plaintiff in error.

*Lane & Murdock*, contra.

RAGAN, C.

In the district court of Douglas county Peter Head sued Jacob Levy, a justice of the peace, and the sureties on his official bond, for damages. The case was tried to the court without a jury and resulted in a judgment for the defendants below, and Head prosecutes to this court a petition in error.

1. Head, in his petition in the court below, alleged for a first cause of action, that on a certain date Levy was justice of the peace and the other parties sued were the sureties on his official bond; that he, Head, was then and there a citizen and resident of the county of Douglas and state of Nebraska; that on said date one Blair brought suit before said justice of the peace against him, Head, and that said justice of the peace wrongfully issued, and delivered to the constable for service, a writ of attachment against Head's property without any undertaking for an attachment having first been executed by Blair as required by law. Head failed to prove that he had sustained any actual damages by the issuance by the justice of the peace of this order of attachment, but he claims that he was entitled to recover nominal damages because of the issuance of the order of attachment without an undertaking having been previously executed by the plaintiff in the attachment suit. Until an undertaking in attachment as required by section 926 of the Code of Civil Procedure had been executed by the plaintiff in the attachment suit, the justice of the peace was without jurisdiction to issue the order of attachment, and his act in so issuing it was not merely erroneous but was absolutely void and rendered him a trespasser. Had the officer levied this writ upon the property of Head then the justice of the peace would have been liable in trespass for all damages which Head sustained by reason of the wrongful issuance of this order of attachment. But the rule seems to be that a public officer is liable for nominal damages for a breach of duty towards an individual though no actual damages result.

In *Laflin v. Willard*, 33 Mass., 64, an officer neglected to return an unsatisfied execution. The court held that the officer was liable for nominal damages to the execution creditor though the latter had not sustained any damages. In that case it was said that where there has been a neglect to perform a duty the law presumes damages to have been sustained. The issuing by the justice of the peace of the order of attachment against the property of Head without an undertaking having been first executed, as required by the statute, was an infringement by the justice of the peace upon the rights of Head. The evidence in the case leaves no doubt in our minds that the order of attachment in controversy was issued without an undertaking in attachment having been executed, and even before an affidavit for an attachment was filed with the justice.

2. For a second cause of action, Head alleged in his petition that he duly made application to Levy, the justice of the peace, for a change of the venue of the action pending before him, in which he, Head, was the defendant, and that Levy demanded and collected from him, Head, illegal fees for granting the change of venue applied for, contrary to the statutes, and for the taking of which illegal fees he demanded judgment against Levy and the sureties on his bond for the $50 penalty provided by statute for the taking of illegal fees.

The evidence shows that the justice charged and collected from Head fees and costs amounting to $6 at the time he granted the change of venue asked for. Section 958 of the Civil Code provides that when a defendant in a suit before a justice of the peace shall be granted a change of venue such defendant "shall be taxed for the costs which have accrued for issuing subpoenas for witnesses and service thereof, witness fees, and costs of the justice for transferring the cause to the docket of the other justice." Levy claims in his testimony that he issued one subpoena for three witnesses named therein; that these three witnesses were served;

that they were each given a mileage of two miles, and each paid for an attendance of one day.  Assuming this to be correct, Levy was entitled to charge fees as follows: Issuing the subpœna, 50 cents; officer's cost of serving same, 75 cents; mileage of the officer, 10 cents; fees and mileage of the three witnesses, $3.30, or a total of $4.65. (See Compiled Statutes, sec. 11, ch. 28.)

The evidence further tends to show that he charged Head 50 cents for transferring the papers in the case to the next justice of the peace, and this charge appears to have been agreed upon between the justice and Head, so that the legal fees which Levy might collect amounted to $5.15; that is, he collected from Head 85 cents in excess of what the law allowed for the services performed. The judgment of the district court is wrong.  This record reveals a condition of affairs calculated to bring into disrepute the administration of justice.  It appears that the suit of Blair against Head was brought before the justice of the peace on the 24th day of January, 1893, and on that date the justice issued an order of attachment against Head's property; but the affidavit for this attachment was not made until three days later,—the 27th of January,—and no undertaking in attachment appears to have ever been executed.  On January 27, Head made application for a change of venue, and on that day, and after such application was made, or the justice knew it was about to be made, a subpœna was issued by the justice for three witnesses named therein.  The justice's filing mark on the back of the subpœna shows that it was returned and filed on the 26th day of January, or the day before it was issued.  The plaintiff in the action makes a so-called affidavit on the back of the subpœna that he had served the same.  This is signed on the 27th day of January, 1894, but there is no venue to this affidavit. The record leads us to the conclusion not only that this justice of the peace issued an order of attachment against a citizen of the state without an undertaking in attachment having been executed, but that he issued such

order of attachment without an affidavit therefor having been filed, and that after the defendant in the action made application for a change of venue the justice of the peace conspired with the plaintiff in the action and issued a subpœna for the three witnesses,—not one of whom is shown to have known anything about the pending case,— who were in a saloon near by, for the express purpose of increasing the costs which Head would have to pay in order to obtain a change of venue. This was an act of malfeasance for which this justice of the peace ought to be impeached if not prosecuted criminally.

One other thing in this record requires attention at our hands. Head supported his application for a change of venue on the ground of the bias and prejudice against him of the justice of the peace, Levy; but in this same affidavit he swore that he could not have a fair and impartial trial before either one of twenty-seven named justices of the peace in said Douglas county. In making this affidavit Head committed perjury. It is not usual for this court to indulge in strictures such as the foregoing, but this record discloses a practice that would put to shame the administration of justice among savages. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.